COBB *v.* THE STATE.

No. 12601. JANUARY 11, 1939.

*Dekle & Dekle, T. J. Evans, Deal & Renfroe,* for plaintiff in error.
*W. G. Neville, solicitor-general, R. Lee Moore, Prince H. Preston Jr., J. J. E. Anderson, D. C. Jones, Charles E. Anderson, D. A. Bragg, L. P. Strickland, Milton A. Carlton, Edgar L. Lane, E. K. Overstreet Jr., Howard, Tiller & Howard, Fred B. Davis, Oliver & Oliver,* for defendant.

GRICE, Justice. The case of *Hooper* v. *Martin,* supra, was evidently cited by the Court of Appeals through inadvertence instead of the case of *Harrell* v. *Word,* 54 *Ga.* 649. Counsel for the plaintiff in error insists that the case of *Harrell* v. *Word* necessitates an affirmative answer to the question propounded. They rely on the following portion of the opinion: "1, 2. The power of the courts to punish for contempt in Georgia is limited. The constitution declares that it shall be limited, and requires legislation to prescribe the limits: Code, section 5009. The legislature of the State has prescribed those limits: Code, section 4711. That section confines the power to cases in the presence of the courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official

transactions, and the *disobedience* or *resistance* by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree or command of said courts. So far as persons other than officers are concerned, the limit to the power confines the court, in cases like this at bar, to the *disobedience* or *resistance* of such person to the writ or process." *Harrell* v. *Word,* supra. The facts in that case were these: A tract of land was offered for sale, regularly, under final process of the court, by .Harrell, the sheriff of Stewart County, and bought in by Shepard as the highest and best bidder at a very inadequate price compared with its proved value. The plaintiffs in fi. fa. moved for a rule against the sheriff, the defendant in fi. fa., and the purchaser, to show cause why the sale should not be set aside and the deed canceled on the ground of fraud and collusion. The defendants answered the rule and denied the fraud and collusion. The court tried the question summarily by written affidavits on the part of the movants, but allowed the defendants to be heard orally, at the same time stating that written affidavits would be more regular. Before the affidavits were read and submitted the defendants' counsel demurred to and moved to dismiss the rule on the ground that the sale of the land could not be set aside and the sheriff's deed to a purchaser canceled in this summary way. The demurrer was overruled and the motion to dismiss refused. The court, after having heard testimony as above mentioned, passed an order fining the sheriff one dollar for contempt, ordering him to pay back the purchase-money to Shepard, setting aside the sale of the land, and commanding Shepard to deliver the deed to the clerk of the court to be canceled by him.

We have examined the original record in *Harrell* v. *Word,* supra, on file in the office of the clerk of this court. The plaintiffs in fi. fa. filed a written motion to set aside a sheriff's sale, not addressed to any court or to any judge, the motion containing averments that the sheriff had fraudulently exposed the land for sale, and he, the defendants in fi. fa., and the purchaser had conspired and confederated for the purpose of defrauding the movants, who were the plaintiffs in fi. fa., in having said land sold. It contained no prayer of any kind, but concluded with the sentence, "wherefore they move the court to set aside said sale." It was in no sense an attachment for contempt. Following the signature of counsel appeared the following, which was also signed by counsel: "The

defendants above named will take notice that at the next term of the superior court of Stewart County we will move to set aside the sale within referred to." At the next term of court the defendants demurred "on the ground that a sale of lands could not be set aside in the manner proposed, and that a deed of conveyance could not in this summary proceeding be canceled." The bill of exceptions contained only the following assignments of error:

"First, in refusing to dismiss said rule on motion for want of service. Second, in overruling the demurrer of defendants' attorneys to said motion or rule, and in deciding that a sale made by the sheriff could be set aside by motion or rule in this summary way. Third, in deciding that the court had jurisdiction in a proceeding of this kind to set aside the sale, although said sale had been consummated by the sheriff executing deed to the purchaser. Fourth, in deciding to set aside said sale, and that said decision is contrary to and against the evidence in said case. Fifth, in not submitting the issue of fact as to fraud to a jury."

We have at some length set forth what the record shows in that case, in order to demonstrate that it therein affirmatively appears that that part of the order adjudging the sheriff in contempt was not excepted to, and its correctness was not before this court as an issue to be determined. The decision in *Harrell* v. *Word,* on the assignments of error there made, was correct. If, in reaching its conclusion, the Justice who delivered the opinion, in discussing the powers of the court to punish for contempt, used language which indicated that the General Assembly had by the constitution been given the right to define what are contempts, to classify them, and to take away from the courts created by the constitution jurisdiction to punish as contempts any act not mentioned in the statute, then such language must be classed as obiter.

The precise question here involved was squarely before the court in *Bradley* v. *State,* supra. In that case the facts were as follows: The contempt proceeding or information charged that the defendant "did commit the offense of contempt of court by the following conduct and act, to wit: in the case of Thomas H. Malone . . v. Mattie Adams . . then and there pending and on trial in said court, when, pending said trial, it became necessary to adjourn the further progress of the cause until Monday, April the 9th, 1900, at which time the said case was to be resumed in said court before

said jury, the court duly instructing said jury as to their conduct during the time of their dispersal and until they were to resume the hearing of said case in the court as above mentioned, the jury being still in charge of said case, the said [defendant] did improperly and corruptly approach [a person named], one of the attorneys engaged in the trial of said case, and did state to said attorney, in substance and effect, that a member of said jury could be approached and illegally influenced in obtaining a verdict, or a mistrial; and did in substance offer, directly or by intimation, that he would approach said juror, or have it done, and corruptly influence and control said juror in order to obtain said verdict or mistrial." Demurrers were filed on the ground that the facts set out did not show that the defendant was guilty of any contempt of court; that the allegations did not show that the contempt, if any was committed, was in the presence of the court or so near thereto as to obstruct the administration of justice; and that if the facts alleged were true the defendant was liable to be indicted for violation of a criminal statute. It was in that case insisted by counsel that under art. 1, sec. 1, par. 20, of the constitution (Code, § 2-120) the legislature was expressly empowered to define what were contempts, and to take away from the courts the jurisdiction to punish for contempt any act not mentioned in that provision of the Code now embodied in § 24-105, the material part of which is stated in the question propounded by the Court of Appeals. The court in the *Bradley* case held that the words of our constitution which were relied upon, to wit, "The power of the courts to punish for contempt shall be limited by legislative acts," do not confer upon the legislature the authority to take away from those courts created by the constitution the jurisdiction to punish as contempts any act not mentioned in the statute above referred to; but that the "power" referred to in art. 1, sec. 1, par. 20, of the constitution of this State refers only to the power to prescribe the punishment after conviction; and that accordingly the provisions of the statute above referred to, in so far as it seeks to limit the jurisdiction of a constitutional court to punish contempt to certain specified acts, is not binding on such courts.

The first two headnotes in the *Bradley* case are as follows: "1. The power to punish contempts is inherent in every court of record. If the court is created by the constitution, the legislature can not,

without express constitutional authority, define what are contempts and declare that the court shall have jurisdiction over no acts except those specified. 2. The provision of the constitution which declares that 'The power of the courts to punish for contempts shall be limited by legislative acts' does not confer such authority, but only the power to prescribe the punishment, after conviction. Consequently, section 4046 of the Civil Code, in so far as it seeks to limit the jurisdiction of a constitutional court to punish contempts to certain specified acts, is not binding upon such courts. They may go beyond the provisions of the statute, in order to preserve and enforce their constitutional powers by treating as contempts acts which clearly invade them." Counsel for plaintiff in error requests us to review and overrule *Bradley* v. *State,* supra. We are of the opinion that the ruling there made is correct, and decline to overrule that case. Aside from being satisfied with the reasoning of Chief Justice Simmons, and the grounds upon which the decision was placed, we call attention to the fact that *Bradley* v. *State* was decided more than thirty-eight years ago, and although 172 constitutional amendments have been submitted to the people of this State since that date (besides several others which received the requisite majority in both branches of the General Assembly, but which the Governor did not submit to the people for ratification or rejection), no effort has been made to alter it with respect to the paragraph which was under consideration in the *Bradley* case. Where a ruling made by an able bench, after full argument by able counsel, has been followed and applied in divers cases, and has been left unmolested by the General Assembly, it should not, unless for impelling reasons, thereafter be changed by the court. The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it. Compare *Adams* v. *Brooks,* 35 *Ga.* 63, 66; *Shaw* v. *State,* 60 *Ga.* 246; *Almand* v. *Almand,* 95 *Ga.* 204 (22 S. E. 213).

The question propounded by the Court of Appeals is answered in the negative.

*All the Justices concur. Jenkins and Duckworth, JJ., concur specially.*

JENKINS, Justice, concurring specially. The ruling of this court in *Bradley* v. *State*, supra, is binding unless and until overruled by a full bench. For that reason I concur in the answer given to the certified question of the Court of Appeals. My own views, however, are as follows: The provision of art. 1, sec. 1, par. 20, of the constitution (Code, § 2-120), that "the power of the courts to punish for contempt shall be limited by legislative acts," should be taken to mean that the General Assembly is authorized to limit, in the sense of defining, what particular acts the courts are authorized to punish as for contempt, as well as to define or limit the punishment to be imposed, provided always that in exercising such authority it does not impair or destroy the inherent powers of courts which are necessary to their proper functioning. If this provision of the constitution should be otherwise interpreted, then the courts created by it would be stillborn, and it must not be assumed that the constitution would do the vain and useless thing of creating courts which might be deprived of the right and power to function save at the will and sufferance of any person who might care to challenge their lawful authority. In pursuance of the authority conferred on it by the constitution, the legislature passed the following statute: "The powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of misbehavior of any person or persons in the presence of said courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any officer of said courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the said courts." Code, § 24-105. As I see it, in enacting this statute the legislature did not impair any necessarily inherent power of the courts. On the contrary, to my mind, it specifically recognized every such necessary, inherent, and, I might say, proper right which any court should and must have in order to fulfill the purposes of its establishment. It may be true that the legislature, in prescribing the limits of judicial power to punish for contempt, could have gone further than it did go, and thus could have enlarged the powers of courts to punish for con-

tempt. This, however, it did not see proper to do, but contented itself by merely recognizing and preserving every power necessarily inherent in the courts by virtue of their constitutional establishment. Having done this, it has expressly forbidden any additional power to be exercised. Thus it is that the statute neither gives nor does it take away. It lets the law governing punishment for contempt stand just as it was when the constitutional provision was enacted, neither adding to what already existed as inherently belonging to the courts created by it, nor attempting any unlawful purpose to take away those already necessarily inherent powers without which no court could function. To limit does not necessarily mean to take from. The statute merely forbids the exercise of any attempted extra-judicial power. It is therefore my opinion that the statute does to this extent limit the power of courts to punish for contempt; and that but for the ruling in *Bradley* v. *State,* supra, the certified question should be answered in the affirmative. Mr. Justice Duckworth concurs in this view.