26958. COBB *v.* THE STATE.

DECIDED MARCH 17, 1939.

696

*Dekle & Dekle, T. J. Evans, Deal & Renfroe,* for plaintiff in error.

*W. G. Neville, solicitor-general, Oliver & Oliver, L. P. Strickland, R. Lee Moore, P. H. Preston Jr., J. J. E. Anderson, C. E. Anderson, D. C. Jones, D. A. Bragg, M. A. Carlton, E. L. Lane, F. B. Davis, E. K. Overstreet Jr., Howard, Tiller & Howard,* contra.

FELTON, J. (After stating the foregoing facts.) Mr. Cobb filed no defense to the rule and introduced no evidence explaining or justifying his conduct. He pitched his defense entirely on his plea in bar and to the jurisdiction of Judge Woodrum to hear the contempt proceeding. The two questions to be decided are: (1) whether Judge Woodrum was qualified to hear the contempt case, and (2) whether the criticism of Judge Woodrum was contempt in view of his disqualification in the Cobb murder case, and in view of the illegality of his order restraining the sheriff of Screven County from carrying Mr. Cobb before Judge Hardeman in the bail proceeding.

1. Judge Woodrum was qualified to hear the contempt case. The judge who took jurisdiction of the murder case took it only to the extent that Judge Woodrum relinquished it by reason of his disqualification. Judge Woodrum's relationship to one of the prosecutors in the murder case did not disqualify him from hearing the contempt case. As to the contempt case, Judge Woodrum was still the judge of the superior court of Screven County and of the Ogeechee judicial circuit, and the only court having jurisdiction of the contempt case is the court alleged to be affected by the alleged contempt. *In re Fite,* 11 *Ga. App.* 665 (76 S. E. 397). The prosecutors in the murder case had nothing to do with the contempt proceeding; it did not affect them in the remotest way; they were not parties to it. It was a matter entirely between the court and Mr. Cobb.

2. Mr. Cobb's contention is that Judge Woodrum was disqualified and without jurisdiction or legal authority to pass the order restraining the sheriff from carrying him before Judge Hardeman in the bail hearing, that his order was therefore not a judicial order, and that he had a right to say what he pleased about such order and the person who signed it so far as a contempt of court was involved. We agree with Mr. Cobb that the order passed by Judge Woodrum was illegal. Code, § 24-2617; *Glover* v. *Morris,* 122 *Ga.* 768 (50 S. E. 956); *Norris* v. *Pollard,* 75 *Ga.* 358. However, the fact that a judge issues an illegal order does not metamorphose his personality from that of a judge to that of an individual. He was purporting to be acting in his judicial capacity, and nothing would take from the act its official character but proof that his judicial authority was perverted wilfully and maliciously, and there is nothing to suggest such in the present record. It is too plain for argument that a judge of a court in this State is not to be subjected to abuse and opprobrium because he renders an improper or an illegal order. If there is any one thing in democratic society which must be presumed conclusively, until judicial determination to the contrary by a court of law of impeachment, it is the integrity of the courts. The structure of our government demands that freedom of speech be subordinated to the welfare of society in the respect for the integrity and sanctity of our courts. A judgeship is an institution and an ideal, and when a judge is accused of wrongdoing it is more than an attack upon an individual. It is

an attack and an undermining of one of the most important supports of the government. If a judge is corrupt or incompetent, there may be a remedy by suit, prosecution, impeachment, or at the polls. The public policy of democracy is that the judiciary shall not be dragged in the mire because of a real or a supposed wrong. If such could be done, and results confined to punishing the judge, the rule might be different, but when it causes disrespect for the high office which the judge seeks to personify, and subjects it to ridicule and contempt, the tendency is for men to turn their backs on the institution created for the safety and well being of mankind and take the law into their own hands. The constitution does not guarantee freedom to "say what we please" about a judge or a court. Contempt of court is an abuse of such a privilege. *In re File,* supra. The right to define and punish for contempt is inherent in constitutional courts, so the definition of contempt in this case, involving the superior court, is not confined to the Code definition by which courts which are not constitutional are governed; and the question whether the conduct complained of interfered with the administration of justice in a pending case is not involved. *In re File,* supra; *Bradley* v. *State,* 111 *Ga.* 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. R. 157); *Cobb* v. *State,* 187 *Ga.* 448 (200 S. E. 796). In view of the radical language complained of in this case, imputing lack of virtue and integrity to the judge of the court for an act done in his official capacity, and in view of the law as laid down by the decisions cited, we hold that there was no error in overruling the pleas to the jurisdiction and in bar, and in adjudging the respondent in contempt.

*Judgment affirmed. Sutton, J., concurs. Stephens, P. J., concurs specially.*

STEPHENS, P. J., concurring specially. I concur in the judgment of affirmance, but I do not concur in or subscribe to all that is stated in the opinion of the majority of the court. Whether the conduct charged against the respondent in the citation for contempt constitutes under the law a contempt of court, for which the respondent could be punished as provided by law, is not presented for our determination. I do not commit myself one way or the other upon this. The respondent himself does not defend the charge on the ground that his conduct did not constitute a contempt of court. He defends against the charge solely on the

ground that his criticisms were not directed at a court or at a legally-qualified judge presiding therein, but were directed at a judge who was "legally dead" by virtue of his being disqualified to preside in the court and determine the matters against which respondent directed his criticisms. I agree with my colleagues that this is no defense to the charge of contempt of court against the respondent. I am therefore of the opinion that, under the pleadings and the evidence, it does not appear that the court erred in adjudging the respondent in contempt.