27774. CARTER *v.* THE STATE.

DECIDED DECEMBER 2, 1939. REHEARING DENIED DECEMBER 18, 1939.

*W. George Thomas,* for plaintiff in error.

*Roy Leathers, solicitor-general,* contra.

GUERRY, J. The defendant was adjudged to be in contempt of court and was sentenced to pay a fine of $200 and to serve ten days in jail. Upon the trial it was agreed by counsel for both parties that the accused owned and operated the Brookhaven Theater in DeKalb County, Georgia, and that on May 13, 1939, a restraining order prohibiting him from showing the film "Ecstasy" was served on him, and that subsequently he placed in front of the theater a sign containing the following words: "Due to selfish contemptible interests we are temporarily restrained from showing 'Ecstasy.' We will bring this picture to you pending court decision." The solicitor-general was sworn and testified that his attention was called to the sign placed in front of the defendant's theater, "and

he thought it was such a flagrant sign, that as solicitor-general it was his duty to bring a proceeding." He further testified "that none of his kin folks, in so far as he knew, is now, or ever has been, on the Atlanta board of film review." No other evidence was introduced by the prosecution. The defendant was sworn and testified as follows: "That he is the owner and operator of the Brookhaven Theater, and that he was temporarily restrained from showing the film 'Ecstasy' on May 13, 1939; thereafter he put the billboard in front of his theater for the purpose of telling the public the reason [why] the picture could not be shown at the time it was advertised to be shown; that he read the restraining order, and wherein it stated that the solicitor-general [had] brought the proceedings upon information, he thought that other interests, who he has cause to believe did not want him to show the picture, made the complaint to the solicitor-general, and that was the reason he portrayed the sign 'Due to selfish and contemptible interests we are temporarily restrained from showing "Ecstasy." We will bring this picture to you pending court decision;' that he had no intention to convey the idea that the contemptible interests were the court, or any of its officers, but that the persons he thought were responsible for trying to prohibit him from showing the picture were Mr. Astin and Mrs. Alonzo Richardson, chairman and secretary of the Atlanta board of film review; that he was sorry that his sign was interpreted as to bring contempt upon the court, as it was not his intention; that he had informed his attorney of the sign, and that his attorney stated that he did not see any harm in such a sign."

The meaning and intent of the language thus used and published is to be determined by a fair interpretation. It is unquestionably true that the placard published by the defendant, to wit, that due to or as a result of selfish and contemptible interests the court had restrained him from showing the picture, was, and amounted to, language which had the effect of expressing contempt of a court because it had either itself or in its official capacity acted selfishly and contemptibly, or was so far lacking in judicial understanding as to be beguiled into selfish and contemptible acts in its official capacity. Such placard was in reference to a matter which was then before the court for its determination. Whether the solicitor-general from his own knowledge or relying on the information of

others had brought the proceedings for the injunction matters but little. The defendant publicly placarded the court as having granted the injunction as a result of selfish and contemptible interests. The trial judge was himself the trior of the issue made. The defendant admitted making and publishing the placard, but denied that he had any intention of conveying the idea that the contemptible interests referred to were the court or its officers, and said that he was referring to persons he thought responsible for trying to prohibit him from showing the picture. In the case of *In re Fite,* 11 *Ga. App.* 665, 675 (76 S. E. 397), this court quoted a contention of the respondent as follows: "Respondent wrote said article intending it only as a fair and reasonable criticism of the decision of the court, and did not mean to reflect upon the integrity of the court, or of any member thereof, nor in any manner to impede, embarrass, or obstruct the court in the administration of justice in said case" In passing on this contention the court said, headnote 7: "The meaning and intent of a published article are to be determined by a fair interpretation of the language used, and when the only construction of the language used is that it is offensive and contemptuous, a mere statement by the writer or publisher that no disrespect to the court or the Judges was intended furnishes no reason for discharging the rule for contempt." "It is too well settled to need citation of authority that the decision of a judge on the question of contempt will not be disturbed by the Supreme Court, except in a case where such discretion has been grossly abused." *Warner* v. *Martin,* 124 *Ga.* 387, 392 (52 S. E. 446, 4 Ann. Cas. 180). We can not bring ourselves to agree that the judge of the trial court (a constitutional court), acting as a trior of facts in this case, grossly abused his discretion in deciding that the language used was offensive and contemptuous, nor can we agree that the evidence was entirely circumstantial. The solicitor-general testified that he saw the sign and its contents. The defendant himself admitted the language used on the sign, and we therefore do not think this case comes within the rule that "A fact can not be established by circumstantial evidence which is perfectly consistent with direct, uncontradicted, reasonable and unimpeached testimony that the fact does not exist." *Neill* v. *Hill,* 32 *Ga. App.* 381, 382 (2-b) (123 S. E. 30).

The court did not abuse its discretion in holding the evidence was sufficient to show a contempt of court.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. I agree with the solicitor-general that the power of a superior court to define and classify contempts of court is not limited by the Code, § 24-105, which reads in part as follows: "The powers of the several [constitutional] courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of misbehavior of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice." *Cobb* v. *State,* 187 *Ga.* 448 (200 S. E. 796, 121 A. L. R. 210). The contrary ruling in *Townsend* v. *State,* 54 *Ga. App.* 627 (188 S. E. 560), must yield to the decision of the Supreme Court in the *Cobb* case. However, in the same case (59 *Ga. App.* 695, 2 S. E. 2d, 116), where this court affirmed the judgment finding the defendant guilty of contempt of court, Cobb wrote and published a book in which he specifically denounced the decision of Judge Woodrum of the superior court in a case then pending in that court. Furthermore, Cobb, in his book, used the following intemperate and savage language: "Woodrum is as much a judicial prostitute as is any loose wretch who walks the streets a moral prostitute." Obviously, Cobb was guilty of a flagrant and inexcusable contempt of court. I also agree with the solicitor-general that "the meaning and intent of a published article are to be determined by a fair interpretation of the language used, and when the only construction of the language used is that it is offensive and contemptuous, a mere statement by the writer or publisher that no disrespect to the court or the Judges was intended furnishes no reason for discharging the rule for contempt." *In re Fite,* 11 *Ga. App.* 665 (7) (supra). However, as stated by this court, in *Towsend* v. *State,* supra, "Judge Fite, in a published article in a newspaper, had criticised a decision of the Court of Appeals in a specific case which was still pending in that court, and in so doing *had impugned the judicial integrity of the Judges of the Court of Appeals in the rendition of the decision in that case.*" (Italics mine.) In that case, Judge Fite, directly and specifically, denounced the *court itself.* In the instant case, the published language complained of did not directly mention or refer to the court, and I do not think that its *only* construction is that it was intended as a criticism of the *court.* However, the

434

language was ambiguous and, nothing more appearing, might have been construed by some persons as a reflection on the court; but when the defendant on his trial testified *under oath* that he was not referring to the court, but to. *third persons whom he named, and this sworn testimony was not contradicted by any other evidence,* I think that his conviction was unauthorized. The evidence for the State was purely *circumstantial,* and weak at that, while the defendant's evidence *was direct, positive, uncontradicted, and unimpeached.* "A fact can not be established by circumstantial evidence which is perfectly consistent with direct, uncontradicted, reasonable and unimpeached testimony that the fact does not exist." *Neill* v. *Hill, 32 Ga. App.* 381 (2-b) (supra). In the last sentence of the language complained of, to wit, "We will bring this picture to you pending court decision," the defendant was unfortunate in the use of the word "pending," but, under all the facts of the case, it does not reasonably appear that he intended to violate the restraining order by showing the picture *before* the court had finally passed on the matter. The only reasonable construction of the language is that the defendant would bring the picture back *when and if* the court dismissed the restraining order. In my opinion, the defendant by his sworn statement and by his apology to the court purged himself of any intention to criticise the judicial act of the court in passing the restraining order.