68164. GARLAND v. THE STATE.

CARLEY, Judge.

Appellant-attorney appeals from an order adjudicating him to be in criminal contempt of court.

The relevant facts are as follows: Appellant represented a client who was one of several individuals under indictment for a drug of-

fense. At the arraignment on August 5, 1983, the trial court ordered that, for security purposes, appellant's client be transferred to a jail in another county. Thereafter, appellant received a call from his client who stated that "he wanted to stay" where he was. As of August 9, 1983, appellant's client had not yet been transferred, and on that date, appellant's associate met with the client. After this meeting, the associate left the jail and went to the office of a physician who had not examined the client in almost three weeks. Appellant's associate obtained from the physician a letter which stated that moving appellant's client would endanger his health. Although the letter was addressed to the trial court, appellant's associate hand delivered it to the sheriff's office rather than to the trial court. During the early morning hours of August 10, 1983, armed intruders broke into the jail and freed appellant's client.

A contempt hearing was held on August 18 and 19, 1983 to determine whether the sheriff should be cited for failing to comply with the order to transfer appellant's client. Only then was the trial court made aware of the existence of the physician's letter that had been addressed but not delivered to it. Appellant and his associate were not present at the sheriff's contempt hearing to offer an explanation of their conduct. Based upon the evidence which was adduced, the trial court concluded that the propriety of the attorneys' conduct had been "reasonably called into question."

Pre-trial motions in the drug case had been scheduled for a hearing on September 2, 1983, and all counsel in the case, including appellant and his associate, were notified to be present on that day. Before the scheduled hearing on the pre-trial motions, the trial court requested that appellant and his associate come forward and be sworn. After the trial court determined that both were aware of various statutory provisions and certain canons of ethics, the associate was questioned concerning his securing of the physician's letter. The trial court then questioned appellant. Thereafter, the trial court concluded "that the propriety of the conduct of both [appellant and his associate] creates some grave questions in this court's mind which we judge inappropriate to . . . pursue [further] at this time." The trial judge then recused himself sua sponte from the drug case and accordingly ordered that the scheduled hearing on the pre-trial motions be continued.

Approximately thirty minutes later, appellant was interviewed by a newspaper reporter. During this interview, appellant made certain remarks about the trial court, including the following: That the trial court had conducted "a sham proceeding"; that the trial court's "conducting an inquisition was unlawful and improper"; that "[t]his is a political effort to turn a tragedy into political hay for" the trial judge and that "it stinks"; that the trial court's actions had "violated the

canons of judicial ethics, constitutes slander of the rankest order . . . ."; that the trial court had "not one fact to back up his scandalous accusations . . . ."; that when he "cool[ed] down, [he was] going to decide whether to file a complaint with the State Judicial Commission about the [judge's] conduct"; that the trial court had required him and his associate to attend the scheduled hearing on the pre-trial motions "knowing full well [the judge] would disqualify" himself in the case; that he was "mad and . . . resent[ed] it"; that there was "no misconduct. There is absolutely no evidence of impropriety by any attorney in this case to [his] knowledge . . . ."

Appellant's comments were published in the reporter's newspaper. Subsequently, appellant was ordered to show cause why he should not be cited for contempt. A hearing was conducted by another trial judge who determined that appellant should be held in contempt of court. It is from that order that appellant appeals.

1. "Contempt of court, as a punishable offense, is as old as the courts themselves. [Cit.] This is especially true in the case of criminal contempt where the court exercises a disciplinary and summary jurisdiction over attorneys and other officers of justice. [Cit.]" *Crudup v. State*, 106 Ga. App. 833, 837 (129 SE2d 183) (1962), aff'd 218 Ga. 819 (130 SE2d 733) (1963). "A criminal contempt is an act committed against the court as an agency of the government, and as to this class of contempts the public is primarily interested. A contempt of this character may consist in 'speaking or writing contemptuously of the court, or Judges acting in their judicial capacity.' Contempts of this character need not relate to a cause that is still pending in the court." *In re Fite*, 11 Ga. App. 665 (4) (76 SE 397) (1911). "Care must be taken, however, to distinguish between cases of contempt in facie curiae and those involving an out-of-court statement. The latter involves the constitutionally guaranteed liberty of free expression and the power of courts to punish for such contempts is limited to cases in which there is a 'clear and present danger to the administration of justice.' [Cits.]" *Crudup v. State*, supra at 837. "While attorneys as officers of the court are under a duty to maintain the integrity and dignity of the court and respect for its authority, for acts committed outside the presence of the court which do not constitute misbehavior as an officer of the court in an official transaction or disobedience or resistance of any lawful writ, etc., of the court, attorneys are no more amenable to attachment and summary punishment for contempt of court than are other persons. [Cit.]" *Townsend v. State*, 54 Ga. App. 627, 635 (188 SE 560) (1936). However, "[t]he constitutional right of freedom of speech or of the press was not intended as a refuge for the contemnor . . . . Contempt of court . . . constitute[s an abuse] of the privilege . . . ." *In re Fite*, supra at 665 (6).

The issue in the instant case is whether appellant's out-of-court

statements, as reported in the newspaper, constituted criminal contempt of court or was instead constitutionally protected free speech. The propriety of neither the trial court's original determination that the conduct of appellant and his associate warranted further investigation nor the manner in which the trial court subsequently instituted and conducted that investigation is an issue in the instant case. "The trial court has a very wide discretion in regulating and controlling the behavior of court officers in the conduct of the proceedings before it, and this discretion will not be interfered with unless flagrantly abused. [Cits.]" *In re McLarty*, 152 Ga. App. 399, 402 (263 SE2d 194) (1979). Clearly, serious questions are raised by the escape of an indictee in which a letter secured by counsel and addressed but never delivered to the trial court may have played a part. Even assuming that, under such circumstances, the trial court exceeded its authority by conducting its own investigation of that escape in open court, appellant would not thereby be afforded any defense to the instant citation for contempt. "[T]he fact that a judge issues an illegal order does not metamorphose his personality from that of a judge to that of an individual. He was purporting to be acting in his judicial capacity, and nothing would take from the act its official character but proof that his judicial authority was perverted wilfully and maliciously, and there is nothing to suggest such in the present record. It is too plain for argument that a judge of a court in this State is not to be subjected to abuse and opprobrium because he renders an improper or an illegal order." *Cobb v. State*, 59 Ga. App. 695, 701 (2 SE2d 116) (1939). As appellant himself noted in his newspaper interview, there was a non-contemptuous means readily available by which to seek the rectification of whatever wrong the trial court might have done to him, that being the filing of an official complaint with the State Judicial Qualifications Commission. Thus, it is appellant's contempt vel non that is the issue in the instant case, rather than the possible impropriety of the trial court's actions which prompted appellant's statements.

Appellant's statements as reported in the newspaper clearly evince more than mere criticism of the general manner in which the trial court conducted its judicial functions. The statements impugned the very judgment and integrity of the trial court with specific regard to the manner in which it had handled its inquiry into the conduct of appellant and his associate. Appellant characterized the trial court's inquiry as a "sham proceeding," an "inquisition" and a "political effort" from which the trial court would personally derive "political hay." Appellant further intimated that the trial court "knew well" beforehand that the final outcome of the scheduled hearing would be its sua sponte recusal from the case which was based upon its "grave questions" concerning appellant's conduct. The instant case is en-

tirely distinguishable from *Townsend v. State*, supra. Unlike that case, appellant's out-of-court statements clearly had "reference to the conduct of the judge as respects the judicial disposition of [a hearing] by the court, and contained [statements] impugning the judgment or integrity of the judge . . . ." *Townsend v. State*, supra at 634. Appellant's statements more nearly resemble those held contemptuous in *In re Fite*, supra, and in *Cobb v. State*, supra. Those statements "had the effect of expressing contempt of a court because it had either itself or in its official capacity acted selfishly and contemptibly, or was so far lacking in judicial understanding as to be beguiled into selfish and contemptible acts in its official capacity." *Carter v. State*, 61 Ga. App. 430, 431 (6 SE2d 175) (1939).

It is those portions of appellant's out-of-court statements that impugn the trial court's integrity with regard to an act undertaken in its official capacity which remove the instant case from the ambit of constitutionally protected criticism and which constitute a contumacious interference with or an obstruction of the administration of justice. "If the court is scandalized, the integrity of its Judges impeached by gross, defamatory libels of their character and their decisions, the consequences are far more hurtful than in cases of direct contempts, committed in their presence; for unfair, unjust, and libelous criticisms of judicial proceedings, and unwarranted attacks reflecting upon the Judges in their judicial capacity, not only tend to endanger the rights of parties in pending cases, but they prevent that calm and dispassionate discussion and investigation of such causes so necessary to their just and proper determination. Pernicious attacks of this character not only impede and embarrass the due administration of law and justice by the courts, but are calculated to inflame public anger, and arouse public prejudice and clamor against the Judges in the performance of their judicial functions." *In re Fite*, supra at 679-680. "If a judge is corrupt or incompetent, there may be a remedy by suit, prosecution, impeachment, or at the polls. The public policy of democracy is that the judiciary shall not be dragged in the mire because of a real or a supposed wrong. If such could be done, and results confined to punishing the judge, the rule might be different, but when it causes disrespect for the high office which the judge seeks to personify, and subjects it to ridicule and contempt, the tendency is for men to turn their backs on the institution created for the safety and well being of mankind and take the law into their own hands. The Constitution does not guarantee freedom to 'say what we please' about a judge or a court. Contempt of court is an abuse of such a privilege. [Cit.] . . . . [T]he question whether the conduct complained of interfered with the administration of justice in a pending case is not involved. [Cits.]" *Cobb v. State*, supra at 702.

The trial court made no direct accusations of misconduct, but

merely stated that "grave questions" had been raised by the conduct of appellant and his associate. Appellant's criticism was not limited to public assertions and protestations that such "grave questions" were in truth unfounded. Appellant's criticism exceeded the bounds of legitimate disagreement and impugned the integrity of the trial court itself. "[I]n view of the law as laid down by the decisions cited, we hold that there was no error . . . in adjudging [appellant] in contempt." *Cobb v. State*, supra at 702.

2. The order finding appellant in contempt does not contain a specific recitation that such finding had been made "beyond a reasonable doubt." Appellant contends that, absent such a finding, the order must be reversed.

In 1949, the Supreme Court of this State, while noting that under "the great weight of authority" the reasonable-doubt standard was applicable in cases of criminal contempt, held that the question was nonetheless "one to be determined by the internal law of this State. [Cits.]" *Pedigo v. Celanese Corp.*, 205 Ga. 392, 399 (54 SE2d 252) (1949). Our Supreme Court then determined that, under the "internal law of this state," the preponderance-of-the-evidence standard and not the beyond-a-reasonable-doubt standard was applicable in such cases. *Pedigo v. Celanese Corp.*, supra at 403. The Supreme Court of the United States denied a writ of certiorari as to this ruling. 338 U. S. 937 (70 SC 346, 94 LE 578) (1950). Subsequent adherence to the preponderance-of-the-evidence standard is evidenced by an unbroken line of Georgia authority. See generally *Renfroe v. State*, 104 Ga. App. 362, 365 (121 SE2d 811) (1961); *Hill v. Bartlett*, 124 Ga. App. 56 (183 SE2d 80) (1971); *Farmer v. Holton*, 146 Ga. App. 102, 108 (3) (245 SE2d 457) (1978). Appellant has cited us to no decision of the United States Supreme Court which would indicate that *Pedigo v. Celanese Corp.*, supra, is no longer binding authority on this court.

Accordingly, " '[t]he matter is not, strictly speaking, a criminal case, but is only quasi-criminal. It is tried under the rules of civil procedure . . . and a preponderance of evidence is sufficient to convict the defendant, as against the requirement of removal of any reasonable doubt which prevails in criminal cases.' [Cits.] If there is any substantial evidence authorizing a finding that the party so charged was guilty of contempt, and that is the trial judge's conclusion, his judgment must be affirmed insofar as the sufficiency of the evidence is concerned. [Cit.]" *Farmer v. Holton*, supra at 108. The evidence in the instant case meets this standard.

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

Decided June 20, 1984 —
Rehearing denied July 10, 1984 — 

*Bobby Lee Cook, Steven H. Sadow, Donald F. Samuel,* for appellant.
*William U. Norwood III,* for appellee.