## 41422. GARLAND v. THE STATE.
### (325 SE2d 131)

PER CURIAM.

Appellant Garland, an attorney, was convicted of criminal contempt in the Superior Court of Baker County and fined $500. The conviction was affirmed by the Court of Appeals. *Garland v. State*, 171 Ga. App. 519 (320 SE2d 548) (1984). We granted certiorari to answer two questions: (1) Whether the preponderance of the evidence standard of proof may be constitutionally applied in cases of criminal contempt; and (2) whether the out-of-court statements made in this case constituted criminal contempt.

Garland was retained as counsel for Stephen Brown, a defendant in a cocaine trafficking case in Baker County. On August 5, 1983, Judge Wallace Cato ordered that Brown be transferred to a jail in another county. An associate of Garland obtained a letter from a physician who had examined the prisoner nearly three weeks earlier indicating that the transfer would be harmful to his health. Although addressed to the court, the letter was delivered to the sheriff's office. On August 10, 1983, the prisoner was freed from the jail by armed intruders. Following a hearing August 18 and 19, 1983, as to whether the sheriff should be held in contempt for failing to transfer the prisoner, Judge Cato found that the propriety of the conduct of appellant and his associate had been "reasonably called into question." Neither attorney was present at this hearing. Before a scheduled pretrial motion in the Brown case on September 2, 1983, Judge Cato asked that both attorneys be sworn and questioned them extensively as to their possible involvement in the escape. The judge then announced that "the propriety of the conduct of both creates some grave questions in this court's mind which we judge inappropriate to . . . pursue at this time." Appellant was not given an opportunity to be heard. The judge then recused himself from the Brown case, ordering a continuance of the pretrial motion hearing.

A short time after the hearing was continued appellant was introduced to a reporter from the *Albany Herald* at the office of another attorney. He made the following remarks to this reporter about the hearing and the actions of Judge Cato: "That the trial court had conducted 'a sham proceeding'; that the trial court's 'conducting an inquisition was unlawful and improper'; that '[t]his is a political effort to turn a tragedy into political hay for' the trial judge and that 'it stinks'; that the trial court's actions had 'violated the canons of judicial ethics, constitutes slander of the rankest order . . . .'; that the trial court had 'not one fact to back up his scandalous accusations . . . .'; that when he 'cool[ed] down, [he was] going to decide whether to file a complaint with the State Judicial Commission about the [judge's] conduct'; that the trial court had required him and his asso-

ciate to attend the scheduled hearing on the pre-trial motions 'knowing full well [the judge] would disqualify' himself in the case; that he was 'mad and . . . resent[ed] it'; that there was 'no misconduct. There is absolutely no evidence of impropriety by any attorney in this case to [his] knowledge . . . .' " *Garland v. State,* supra at 520-21.

After these remarks were published in the newspaper appellant was ordered to show cause why he should not be held in contempt. He was held in contempt following a hearing conducted by another judge. In affirming that order the Court of Appeals held his comments impugned the judgment and integrity of the trial court with regard to the investigation into appellant's conduct. The Court of Appeals indicated that comments impugning the trial court's integrity in regard to an act taken in its official capacity are beyond the bounds of constitutionally protected speech because they constitute "a contumacious interference with or an obstruction of the administration of justice." Id. at 523. The Court of Appeals also concluded that under *Pedigo v. Celanese Corp.,* 205 Ga. 392 (54 SE2d 252) (1949), application of the preponderance-of-the-evidence standard rather than the beyond-a-reasonable-doubt standard was applicable to the evidence in a contempt case.

1. At the outset we note that the evidence in any criminal contempt case must show that the defendant is guilty beyond a reasonable doubt. In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970). See also *In re Crane,* 253 Ga. 667 (324 SE2d 443) (1985). "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." Bloom v. Illinois, 391 U. S. 194, 201 (88 SC 1477, 20 LE2d 522) (1968). *Pedigo v. Celanese Corp.,* supra, is in conflict with these principles. We hereby overrule that case and hold that in all criminal contempt cases the evidence of the contempt must be beyond a reasonable doubt.

2. We turn now to a question of whether Garland was guilty of contempt beyond a reasonable doubt. Statements made in the presence of the court or outside of the presence of the court are protected by the guarantee of freedom of speech of the First and Fourteenth Amendments of the United States Constitution and by the Georgia Constitution (Art. I, Sec. I, Par. V). Contemptuous statements are not so protected. The test applied to determine whether a statement is contemptuous is whether there is a clear and present danger to orderly administration of justice. Wood v. Georgia, 370 U. S. 375 (82 SC 1364, 8 LE2d 569) (1962). "[N]either 'inherent tendency' nor 'reasonable tendency' is enough to justify a restriction of free expression." Bridges v. California, 314 U. S. 252, 273 (62 SC 190, 86 LE 192) (1941).

The identification of a statement as constituting clear and pre-

sent danger to the orderly administration of justice can be made only after taking into account the setting in which the statement is made. The possible settings are numerous, but four broad ones come to mind immediately: statements made in court, statements made out of the court but while a judicial proceeding is pending, statements made out of the court during the pendency of a judicial proceeding but concerning a judge who is no longer involved in the proceeding, and statements made out of the court where no proceeding is pending.

Each of these must be viewed differently. The broad authority of a judge to preserve good order in the courtroom by the use of contempt power is well recognized and must be preserved if the courts are to perform their public duty. Therefore in-court statements and conduct are subject to reasonable control. Out-of-court statements during the pendency of a judicial proceeding which might influence the outcome of the proceeding may also create a clear and present danger to the orderly administration of justice. However, in this instance, the balance between orderly administration of justice and the right of free speech becomes more delicate and must be more carefully examined by the court. Bridges v. California, supra. The case before the court here bears similarity to each of the last two of the four broad settings described above. The judge about whom the statements were made has recused himself and even if further proceedings were pending, influences upon him would have no impact upon such proceedings. Additionally, it appears that while the criminal case against Garland's client is still pending, there has been no further investigation into possible involvement by Garland or his associate in the escape.

With these observations in mind we consider the nature of contemptuous statements. Justice Black observed in Bridges v. California, supra, "The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect." Id. at 270-71.

The statements here were made outside of the courtroom. They could not have the effect of intimidating the court in a pending trial because Judge Cato had recused himself from the Brown case before the statements were made. The question, then, is whether these statements created a clear and present danger to the administration of justice. Reducing the remarks to those aimed directly at Judge Cato, we find that appellant said he had conducted a "sham proceeding" and unlawfully and improperly conducted an inquisition. He said that this

was an effort to turn tragedy into political hay for Judge Cato. Finally, he said that Judge Cato's actions violated the canons of judicial ethics and constituted slander. We do not condone statements of this nature. Civility and courtesy should be hallmarks of the legal profession, and statements or conduct which offend this precept are not favored. However, we are dealing here with the narrow issue of criminal contempt and its even narrower limitation of clear and present danger. We are not dealing with the broader areas of civil actions for libel or slander or disciplinary proceedings against an attorney. Viewing this case in the context of the restraints by which we are bound, we cannot find the statements present a clear and present danger to the administration of justice.

*Judgment reversed. Hill, C. J., Clarke, Smith, Gregory, Bell, JJ., and Judge Joseph H. Gaines concur. Marshall, P. J., dissents. Weltner, J., disqualified.*

DECIDED JANUARY 9, 1985 —
REHEARING DENIED FEBRUARY 19, 1985.

*Albert M. Pearson III, Cook, Cook & Palmour, Bobby Lee Cook, Garland, Nuckolls & Catts, Steven L. Sadow,* for appellant.
*William U. Norwood III,* for appellee.
*Martin & Young, John R. Martin,* amicus curiae.

MARSHALL, Presiding Justice, dissenting.

I respectfully dissent to the conclusion of the majority that the statements by the appellant do not constitute criminal contempt.

I cannot conceive of more contemptuous statements, short of obscenity, than those made by the appellant: "That the trial court had conducted 'a sham proceeding'; that the trial court's 'conducting an inquisition was unlawful and improper'; that '[t]his is a political effort to turn a tragedy into political hay for' the trial judge and that 'it stinks'; . . ." Paraphrased, appellant accused the judge of running a "Kangaroo court," acting as an inquisitor, using the court as a political vehicle, and, in sum, conducting an operation that smells to high heaven. Such statements cannot fail to obstruct justice in the South Georgia Circuit and the State of Georgia.

In about 14 years as a trial judge in the Southwestern Judicial Circuit and while sitting in superior courts in 25 different counties, I never held a lawyer in contempt. I hasten to add that no lawyer's statements before me ever approached the degree of contempt evi-

denced by the appellant in his statements concerning Judge Cato.