## 21675. WHITE v. STATE OF GEORGIA.

ARGUED JULY 10, 1962—DECIDED SEPTEMBER 21, 1962.

*Houston White,* for plaintiff in error.
*Paul Webb, Solicitor General, Eugene L. Tiller, Herbert Johnson,* contra.

GRICE, Justice. The adjudication of criminal contempt of court in this proceeding raises questions pertaining to the rights and responsibilities of an attorney before a trial judge. Houston White was adjudged in contempt of the Superior Court of Fulton County by Judge Luther Alverson. That judgment was affirmed by the Court of Appeals. *White v. State of Ga.,* 105 Ga. App. 616 (125 SE2d 239). Because of the vital questions involved, application for certiorari was granted.

The facts have already been reported extensively by the Court of Appeals and only those necessary for the disposition required to be made here will be stated.

On May 5, 1960, a judgment of contempt, providing alternative fine or confinement, was entered by Judge Alverson on account of words spoken by Mr. White concerning his motions to continue a child custody hearing. During the month of June Mr. White filed numerous pleadings addressed to that judgment, and a hearing was held on June 30 and July 1. Upon changing of the caption of the May 5 judgment by Judge Alverson, Mr. White filed renewed pleadings to that judgment as amended.

On August 3 another hearing was conducted by Judge Alverson upon all pending matters, and on that date he entered a judgment which recited, among other things, that Mr. White had apologized for his statements which formed the basis of the contempt matter, called attention to his illness on that occasion, and set aside the contempt judgment.

However, on August 30 Mr. White evidenced dissatisfaction with the language of the August 3 judgment in a motion reciting that he had not apologized, that the statement that he had done so was false, that it erroneously indicated his guilt, and that the publicity resulting therefrom had damaged him. He prayed that the August 3 judgment and all other judgments be set aside, that judgments be rendered on all of his pleadings previously filed, and that a judgment of not guilty be entered.

On October 21 a hearing was had by Judge Alverson and on that date he entered a judgment which set aside the August 3 judgment and left the May 5 contempt judgment of full force and effect. The judgment denied the remaining prayers of Mr. White's motion, and Judge Alverson declined to enter any further orders or judgments upon his pleadings.

Subsequently, Mr. White carried his case to the Court of Appeals, which held that the trial court did not abuse its discretion in holding him in contempt and that such adjudication was not erroneous for any reason assigned. The majority opinion was concurred in by six judges. There were also a special concurring opinion by one judge, a dissenting opinion by one judge, and another dissenting opinion by two other judges.

1. This lengthy record abounds with motions, pleas, answers, and judgments and discloses a myriad of procedural problems. However, we have found it necessary to refer to only one. That

one is whether each of Mr. White's assignments of error to the decision by the Court of Appeals must be denied consideration because of the rule that one who procures a judgment cannot thereafter complain of that judgment.

We do not deem that rule applicable here. Mr. White by his motion of August 30 prayed, among other things, that all judgments previously entered be set aside, that judgments be rendered on all of his pleadings previously filed, and that a judgment of not guilty be entered. True, the subsequent judgment of October 21, pursuant to that motion, set aside the August 3 judgment (which had recited his apology and set aside the May 5 contempt judgment), but it also re-instated the May 5 contempt judgment without ruling on the other pleadings. Mr. White certainly did not seek that result. What he did seek, as shown by his motion and the colloquy at the hearing upon it, was an opportunity to overturn the May 5 contempt judgment by virtue of his pleadings previously interposed but not then ruled upon and thus have the record conclude with a judgment that he was not in contempt. What the judge did was to restore the May 5 contempt judgment so as to leave him in contempt. He did not rule on the pleadings previously filed. Therefore, we do not consider applicable the rule expressed in such cases as *Bennett v. Bennett,* 210 Ga. 721, 722 (82 SE2d 653).

2. Moving, then, to the assignments of error made here, we begin by examining the specifications of the May 5 contempt judgment to ascertain what was said by Mr. White and the significance of his statements.

(a) The words forming the basis of the first specification, "Well, regardless of the innermost thinking, Sir, outside I have tried to maintain respect for this court, Sir," cannot be held to be contemptuous. They grew out of Mr. White's statement that a certain legal position was not sound, the judge's comment that he was subject to correction by this court but not by Mr. White, the latter's reply that in stating his positions he had tried "to say it most respectfully," and the judge's further comment that while Mr. White "said it most respectfully," he did not think "the word exactly indicates the actions." Mr. White was within his right, as a lawyer, to state his client's

contentions in the case. In doing so he was amenable to the court for his outward manifestations, but not for his innermost thinking.

But other portions of Mr. White's statements to the court, set forth in the May 5 judgment, to wit, specifications 2 and 3, were contemptuous unless the facts and circumstances out of which they arose justified or excused them.

(b) The language in the second specification, "Most everything I say I mean to be in a contention please, sir, I am not saying to you flatly so that you will get your dander up about me making statements," had reference to the judge's comment to Mr. White, made shortly before, that he was in effect presenting testimony by his argument. These words were ill chosen, not in keeping with the dignity and respect expected in the courtroom, and could reasonably have been interpreted as a caustic reflection upon the judge's judicial temperament, especially since the order characterized these and other remarks as having been made "in a discourteous manner."

(c) The third specification contains speech extremely inappropriate, "Well, knowing if I was ever in default in the slightest you would give me the works, so I just try to do my best to be ready." The phrase, including "give me the works," could only convey that Mr. White believed the judge would inflict upon him "drastic treatment, unsparing or ruthless handling, all possible abuse" (Webster's Third International Dictionary, p. 2634), in return for Mr. White's being "ever in default in the slightest." By that language he clearly implied that the judge was not impartial and would not mete out justice when he was involved.

3. This brings us to a consideration of whether the language in the second and third specifications, supra, was not contumacious because of the attendant facts and circumstances.

(a) We begin with the contention that the trial court lacked jurisdiction to enter the contempt judgment.

Mr. White urges that since this court subsequently held in *Slater v. Slater*, 216 Ga. 242 (115 SE2d 353) that the trial court had no jurisdiction to conduct this custody hearing, the judge had no jurisdiction to hold Mr. White in contempt of it.

Such a contention is fallacious. The July 7, 1960, ruling of this court that the Superior Court of Fulton County had voluntarily relinquished jurisdiction in the Slater case to the Juvenile Court of Fulton County and thus was without jurisdiction of the case thereafter in no way deprived the Superior Court of Fulton County of authority to maintain proper decorum on April 13-15, while that court was considering the Slater case. The situation in this respect is vastly different from that where a court's lack of jurisdiction to order an act done results in a lack of power to punish for non-compliance with that order. A judge's performance of duty would be hampered in the extreme if he could preserve order only when he was actually engaged in the trial of a case, and only in a case in which a reviewing court later sustained his jurisdiction.

The attorney's duty to maintain a respectful attitude towards the court is not dependent upon jurisdiction of the court to determine a particular case. Instead, that duty exists because of the attorney's relationship to the court. It begins upon his admittance to the bar when he swears ". . . that I will justly and uprightly demean myself. . ." (*Code* § 9-115). It continues as long as he remains a member of the bar and must be discharged in all of his dealings with the court.

(b) The second contention is that the remarks made were justified or excused by the rulings of the trial judge in the continuance of the Slater case. Mr. White argues that he was provoked by the judge's conditioning the grant of his request for continuance upon relinquishment of the children to the mother pending Mr. White's recuperation and by the judge's summary change of custody upon Mr. White's refusal to accept such condition. This contention is likewise fallacious.

A judge's authority to maintain decorum in his courtroom does not depend upon the correctness of his rulings. No matter how unsound, or erroneous one may consider them to be, they afford no justification or excuse for contempt of the court. Such a situation calls for this reminder: that justice is administered by a system necessitating the proper discharge of duties by both the lawyer and the judge; that it can be administered only by each realizing fully the responsibilities of the other and giv-

ing mutual respect and consideration; and that the lawyer's remedy for a ruling he considers erroneous is correction in accordance with legal procedure.

Consequently, Mr. White was not, for this reason, justified or excused for the language he used.

(c) But as to the third contention, predicated upon the attorney's illness, a review of the facts requires a different conclusion.

Three points of significance in what transpired as to this phase are manifest—the attorney's statements as to his illness, medical confirmation of that illness, and the judge's recognition of it. An account of each follows.

Mr. White, upon call of the case on April 13, informed the court that he was not able to go to trial and requested a continuance, which was denied. On the 14th he repeated that statement and request and it was again denied. In response to the court's observation that his condition then appeared to be as good as on the preceding day and that no doctor's certificate had been submitted, Mr. White stated that he had seen a doctor and obtained treatment, that a medical certificate substantiating his position was forthcoming, and that, despite his appearance, "I didn't feel like doing anything yesterday and I did the best I could, because I am not going to desert these people if I have to be here the rest of the time on a stretcher, please, sir." On the 15th Mr. White again sought postponement. He told the court, "I had a pretty bad night. I can't continue—Excuse me, Judge. I had weak spells all night, I couldn't stop crying. I don't know what is the matter with me. I am so weak I can hardly stand up. I am going to do everything I can, please." After a postponement was indicated and in response to the judge's suggestion, he stated that he would go to Florida for recuperation, expressed regret that his illness was involved, and gave assurance of his sincerity. Then, when the judge announced that the children would be placed with the mother pending Mr. White's recuperation and resumption of the trial, the event causing the second specification ("get your dander up") took place. Shortly thereafter, Mr. White said that such change in custody would require his working the next two weeks to avoid

that change, and in response the judge remarked that although Mr. White contended he had been sick for two or three weeks he had submitted ten or twelve motions in this and other matters. Thereupon, the attorney used the language embodied in the third specification ("give me the works").

Medical confirmation was provided by the three doctors who examined Mr. White. One, his personal physician, certified on April 14th: ". . . On this date I examined Mr. White, and found that he is ill with influenza, and has acute sinusitis. He is not in a physical condition to appear in court or to try a law case, and will not be in physical condition to try a case, in my opinion, for over two weeks from today. I have given him treatment for his illness. For him to appear in court and try a case will physically endanger his health. In my opinion Mr. White should be able to appear in court on Monday, May 2, 1960. I prescribe for him rest and no work and a hot climate for the said period until May 2, 1960."

While the record is in conflict as to when this certificate came to the judge's attention, it was certainly before him when he entered the May 5 contempt judgment. Furthermore, at the judge's suggestion, two county health department physicians examined Mr. White on April 15, before the events comprising the second and third specifications, and reported to the judge, who announced to Mr. White that "they think that you are not physically able to proceed with the trial of this case."

Mr. White's illness was recognized by the judge. On the first day, before the extended argument on demurrers and after his reference to having previously continued the case for two weeks on account of Mr. White's illness, the judge observed to opposing counsel in the case, "Mr. White has been sick . . . There is no doubt about that. I can tell that he has been sick. It is obvious that he has been sick." On the third day, April 15, upon Mr. White's return from his examination by the county doctors the judge announced their findings, as above stated, suggested the trip for recuperation already referred to, predicted a slow recovery from "anything as serious as an attack of influenza," and cautioned him against working at home. Shortly thereafter the judge discussed placement of the children with the mother

during Mr. White's convalescence and it was then that the attorney used the language contained in the second specification ("get your dander up"). Furthermore, the judge, in his order later the same day, April 15, continuing the case and transferring custody, stated that in the opinion of the court he "is not physically able to proceed with the trial of this case and will grant him a recess of this trial for another two-week period so that he may go to Florida and recuperate from his illness." Then, after that attorney's objection to transfer of custody as a condition, the judge stated: "This court had you physically examined this morning by two physicians and [they] have informed this court you were not physically able to proceed with the trial of this case, and this court does not wish to endanger your health and well-being by forcing you in the continuation of the trial of this case. . ." Then occurred the event upon which the third specification ("give me the works") was based. Subsequently, the judge again referred to Mr. White's illness, repeating what the county physicians had reported and making the time for resumption of the trial dependent upon his physical condition and health.

The only facts which could possibly be regarded as inconsistent with the foregoing claim of illness, its confirmation and its recognition, are the following: that on the day before the trial Mr. White served numerous papers on opposing counsel; that early on the first day of the trial Mr. White talked to such counsel by telephone but did not mention his illness; that on that day court was recessed at 3:25 for Mr. White to attend a hearing in another court in the same county; that on the second day the judge remarked that Mr. White appeared to be in as good physical condition as on the previous day when he had vigorously argued the demurrers; that he had recently filed ten or twelve motions in Judge Alverson's court in this and other matters; and that the judge several times, after the events of the second and third specifications, referred to the illness as "contended" or "alleged."

But the immutable fact is that on April 15, shortly *before* the occurrence of the events of specifications 2 and 3, his condition was established and recognized to be that of a lawyer too

ill to discharge his professional duties. It is apparent that his illness had an adverse effect upon his patience, tolerance, poise and self-control while he engaged in three days of a hard fought child custody trial. The judge, clearly and repeatedly recognizing Mr. White's illness, excused him from the further trial of that case until he recovered.

We hold that this man, under these facts, was not subject to the normal standards of conduct and, therefore, should not have been adjudged in contempt.

In reaching this conclusion we are mindful of the rule that a trial judge has broad discretion in the handling of contempt matters since he, not the reviewing court, was present, saw and heard, and that his decision will not be disturbed, except in those instances where there has been a gross abuse of discretion. However, the facts before us require the holding that here there was such abuse.

In this custody controversy, by its very nature charged with emotion, participated in by an ill lawyer, this extremely able judge was confronted with a difficult situation. The decision he made he no doubt reconsidered in arriving at his August 3 judgment, for in it he referred to the attorney's illness and apology, and set aside the contempt adjudication. However, Mr. White chose to continue litigating. Otherwise, the controversy would have ended in Fulton Superior Court on August 3.

*The judgment of the Court of Appeals is reversed. All the Justices concur, except Almand, Mobley and Quillian, JJ., who dissent.*

MOBLEY, Justice, dissenting. I agree that the defendant's statements to the court were contemptuous, but do not agree that his illness excused the conduct and that there was a gross abuse of discretion on the part of the trial judge in holding the defendant in contempt of court. I would affirm the judgment of conviction.

I am authorized to state that Almand, J., and Quillian, J., concur in this dissent.