## 67143. CALHOUN v. FINDLEY.

BANKE, Judge.

This is an appeal from an order sentencing the appellant attorney to pay a total of $100 in fines and to serve a total of three days in jail as punishment for five separate contempt citations which he incurred during the course of his representation of a criminal defendant on trial for murder.

On the first day of the trial, the defendant began to suffer from shortness of breath and abdominal pains, as of result of which the trial was recessed and she was hospitalized overnight. While in the hospital, she was administered the drugs Demerol and Valium on three separate occasions; and, in addition, she was administered the drugs Valium and Attrax upon her arrival back in court the following morning. Demerol is a narcotic, and Valium and Attrax are both tranquilizers.

Prior to resumption of the trial, the judge questioned a physician whom he had previously appointed to examine the defendant, in order to determine whether her condition would permit her to testify and to cooperate with counsel. The physician stated that, in his opinion, there was no reason the defendant could not stand trial; and based on this testimony the court immediately ruled that the trial would continue. The judge denied the appellant's request to be allowed to make a showing on the issue or to cross-examine the physician at this time, stating, "I'm not going to have any further showing on anything, Mr. Calhoun."

Because the defendant appeared to be asleep at the counsel table after the trial resumed, the appellant attorney subsequently made an "oral motion for a plea of insanity," as well as a motion for continuance, stating, "I, at this time, do not know my client's

condition. I don't know whether I can intelligently talk with her or not about the facts and circumstances of her defense. I don't know if she can communicate with me concerning those things . . . and I feel that it's highly prejudicial if I'm not allowed the opportunity to have, call in a doctor or a physician or whatever we deem proper . . . to determine what her condition is." In response to this motion, the court ruled, "I'm not arguing with you, Mr. Calhoun, have a seat. That's the . . . I've overruled your motion on each and every ground thereof. I have nothing further to say, and I don't want to hear anything further from you." Nevertheless, the appellant was subsequently allowed to introduce the defendant's medical record from her overnight stay at the hospital and thereby to establish what medications had been given to her there.

Later in the day, the defendant took the stand to testify on her own behalf, at which time she maintained that she had been asleep all morning and was unaware of what had transpired then. During the course of her testimony, the trial court recalled the court-appointed physician to testify, outside the presence of the jury, as to what sort of medication he had administered to the defendant and whether that medication would cause her to sleep. The physician testified that most of the Demerol and Valium he had prescribed for her should have worn off by the time she arrived at the courthouse that morning. The judge then allowed the appellant to cross-examine the witness, and in doing so, the appellant established that the doctor did not know about the tranquilizers which had been given to the defendant after her arrival at the courthouse that morning. However, when the appellant continued to ask about the possible effect of all these drugs, the court cut short his cross-examination, telling him, "You, you asked me, could you go into the drugs she had. Now you've gone all over the countryside, that's the end of that . . . This is my witness. I don't want to hear anymore from your side . . ."

The events which led to the contempt citations took place as the appellant was examining a psychiatrist whom he had called in an attempt to prove that the defendant had been unable to distinguish between right and wrong at the time the homicide took place. During the course of this examination, the appellant attempted to ask the witness a hypothetical question regarding the effects of Demerol and Valium; and, when the state objected to reference being made to certain medical records, the following exchange transpired between the appellant and the court:

"THE COURT: I, I, I understand and I have cautioned Mr. Calhoun no less than a half dozen times on this same point. He still keeps coming back to it. I don't know what I have to do to keep you from doing it, but I'm beginning to think of a couple things.

"MR. CALHOUN: Your Honor, all I want is the truth.

"THE COURT: I know, I don't want to hear a thing, I just want you to get away from that.

"MR. CALHOUN: I would like . . .

"THE COURT: I don't want to hear any more about it. You stay away from this, all right? No more about it. You are to . . . improperly questioning this witness. I instruct you, to not pursue this line of questioning any further, with regard to any of this information. And I instruct the jury, that you will disregard any questions and any answers that have been given up to this point, in this respect, regarding medication of this defendant, in any hospital, if she's been in the hospital within the last 24 hours or any other period. This is a fact that is not before this court and not before this jury, has been expressly excluded from this jury and you know that. So don't do it any more. Now, just go ahead with your questioning.

"MR. CALHOUN: Uh, could I address the court?

"THE COURT: No, sir, you cannot, continue your questioning.

"MR CALHOUN: Could I make a showing?

"THE COURT: No sir, you can't do a thing, Mr. Calhoun, except, uh, go have a seat if you would like to. But you're not going to pursue this any further.

"MR. CALHOUN: Well . . .

"THE COURT: Take the jury out, please, just a moment. (Jury vacates jury box.)

"Mr. Calhoun, this court has gone to great length to try to keep any prejudicial matter from entering or coming before this jury. Medical testimony from competent physicians placed the defendant in the hospital overnight, found nothing wrong with her, nothing to prevent her from continuing with this trial today. This fact has been kept from the jury, up until this time, although you've tried to get in any number of times, it has been kept from them up until this time. The court has expressly excluded it. You know that it's improper. It is for the court to determine at this point, whether the defendant is competent to stand trial.

"Now, I don't want you to go into this any further, I have instructed you. If you do, I'm going to hold you in contempt of court without any further conversation about it at all. Do you understand that?

"MR. CALHOUN: I understand it, your Honor, please, but I would like to make a showing?

"THE COURT: I'm not allowing you to do anything.

"MR. CALHOUN: Well, would the court . . .

"THE COURT: I am not allowing you to even say anything else about it, if you do, I'm fixing to put you in jail.

"MR. CALHOUN: Well, I couldn't ask the court anything?

"THE COURT: I . . . no, you can't ask anything.

"MR. CALHOUN: Could, could I . . .

"THE COURT: No, sir, you cannot do anything.

"MR. CALHOUN: But, Judge, do you remember. . .

"THE COURT: Pay . . . you can . . I want, after the trial is over, you now are in contempt of court.

"MR. CALHOUN: Yes, sir.

"THE COURT: You are now to pay the, clerk of court, 50 dollars for this offense.

"MR. CALHOUN: Yes, sir. (Mr. Calhoun pays fine to the clerk of court.)

"THE COURT: All right, sir.

"MR. CALHOUN: Could . . . would you instruct the jury to disregard [the state's attorney's] cross-examination. . .

"THE COURT: Now, now the . . .

"MR. CALHOUN: . . . concerning this defendant's attitude?

"THE COURT: . . . the def . . . the defense counsel, will pay the clerk an additional 50 dollars. And, Mr. Calhoun, I'm going to put you in jail if you keep on.

"CO-COUNSEL FOR DEFENDANT: John, John, John.

"MR. CALHOUN: But, Judge, I just needed to talk to the court reasonably?

"THE COURT: Mr. Calhoun, now, has earned one day in jail after the trial is over.

"MR. CALHOUN: Judge, couldn't I . . .

"THE COURT: Mr. Calhoun will now serve two days in jail after the trial is over.

"MR. CALHOUN: (Mr. Calhoun pays fine to the clerk of court.) Is that a hundred dollars? Is that right, Mr. Kitchings?

"I paid the hundred dollars, your Honor. I'll serve the two days any time you want me to.

"THE COURT: And then, Mr. Calhoun, will now serve three days in jail."

At this point, the jury was brought back into the courtroom, and the trial continued. *Held:*

"During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. The carrying out of the punishment announced during trial may be postponed until after trial." *Dowdy v. Palmour,* 251 Ga. 135 (304 SE2d 52) (1983), citing Taylor v. Hayes, 418 U. S. 488

(94 SC 2697, 41 LE2d 897) (1974). Undue haste in exercising this summary contempt power is to be avoided, however, particularly in the case of an attorney who is attempting to be heard on behalf of his client. "The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty... While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases." In the matter of McConnell, 370 U. S. 230, 236 (82 SC 1288, 8 LE2d 434) (1962). Accord *In re Brookins,* 153 Ga. App. 82 (264 SE2d 560) (1980). See also In the matter of Little, 404 U. S. 553 (92 SC 659, 30 LE2d 708) (1972).

The contempt citations imposed by the trial judge in this case clearly violate the Georgia Supreme Court's ruling in *Dowdy v. Palmour,* supra, in that the appellant was not afforded an opportunity to speak in his own behalf prior to the announcement of summary punishment. Furthermore, it is not clear from the record that the appellant's conduct was actually contumacious or disruptive. Rather, the appellant appears to have been courteous and respectful towards the court, and his behavior appears at all times to have been directed towards the legitimate goal of preserving a record on his client's behalf. While an overbearing persistence by counsel in the face of adverse court rulings may certainly reach a stage where it becomes contumacious or disruptive, and while the appellant's conduct in this case came very close to crossing over the line, we do not believe, given the difficult position in which the appellant found himself during the course of this murder trial, and given the extreme importance of the showing which he was attempting to make on his client's behalf, that the court's response was warranted under the circumstances. The judgment of the trial court is accordingly reversed.

*Judgment reversed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 26, 1983.

*William T. Moore, Jr.,* for appellant.
*Dupont K. Cheney, District Attorney,* for appellee.