76599. IN RE BRYANT et al.
(373 SE2d 74)

BENHAM, Judge.

Bryant and King, attorneys, appeal the contempt citation issued to them by Judge Lott, before whom appellants were trying a criminal case. The allegedly contumacious conduct occurred during voir dire of a prospective juror. As a result of the verbal exchange between appellants and the trial court, at the conclusion of the trial the attorneys were cited for contempt, required to pay $100 each, and reprimanded by the court. Appellants contend that the trial court erred in holding them in contempt of court without a due process hearing before another judge, and that the trial court erred in its holding that the conduct of either of the attorneys was contumacious. After reviewing the proceedings, we concluded that reversal of the judgment is required.

1. To resolve the first issue, whether appellants' due process rights were protected by the trial court proceedings, we rely on *Dowdy v. Palmour*, 251 Ga. 135 (2) (304 SE2d 52) (1983). *Dowdy* states that "[d]uring trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. The carrying out of the punishment announced during

trial may be postponed until after trial . . . Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge." Id. at 141. In appellants' case, the trial judge told appellants at the time he observed it that their conduct was contemptuous, and told them that he was holding them in contempt. However, he did not announce the punishment at that time, but said, "I am going to hold you in contempt because I have told you that you do not argue with the Court — when I make a ruling, that is it . . . I am going to hold you in contempt now when this thing is over with, for these questions." At the end of the trial, the same judge held a new contempt hearing, and imposed the money sanction and reprimand.

Applying the due process requirements stated in *Dowdy* to the facts as shown in the record before us, we find that the trial judge delayed the announcement of punishment until the conclusion of trial; that the allegedly contumacious conduct of the attorneys was directed toward the judge; and that, thereafter, the judge reacted to the conduct in such a manner as to become involved in the controversy. Therefore, under the applicable portion of the test set out above, due process required that appellants' contempt hearing should have been conducted by another judge. Id. at 142.

2. The other enumeration raised addresses the sufficiency of the evidence of appellants' allegedly contumacious conduct. "At the outset we note that the evidence in any criminal contempt case must show that the defendant is guilty beyond a reasonable doubt. [Cits.]" *Garland v. State*, 253 Ga. 789 (1) (325 SE2d 131) (1985). The appropriate standard of appellate review for a criminal contempt conviction is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Cits.]' " *In re Irvin*, 254 Ga. 251, 256 (328 SE2d 215) (1985). The essential elements of criminal contempt of court have been "variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court, but 'it also includes the interruption of the proceedings. . . .' [Cit.]" *In re Bergin*, 178 Ga. App. 454, 455 (343 SE2d 743) (1986). Cases of contempt in facie curiae are distinguished from those involving out-of-court statements. A court's power to impose punishment for out-of-court statements is limited to those cases in which there is a "clear and present danger to the administration of justice," while the power to punish for in-court actions involves the inherent power of courts " 'to maintain order in their courtrooms and

to assure litigants a fair trial . . .' [Cit.]" *Crudup v. State of Ga.*, 106 Ga. App. 833, 837 (129 SE2d 183) (1962). Since the occurrence we are reviewing took place in court, the maintenance of order standard applied. Compare *Garland*, supra, Division 2.

The record shows that during voir dire of individual prospective jurors, attorney King, representing the defendant in a criminal case, questioned one of the jurors about his impression of media accounts regarding the defendant's alleged criminal activity. King asked the question, "Based on everything that you know about this case, and bringing us right up into the present, do you presently believe that [the defendant] did something wrong?" The court responded that that was not a proper question, because it questioned what the jury would have to decide. The prosecuting attorney then stated that he had "objected several times" because King was really asking how the juror would vote. The trial court reiterated that the question was improper. When King said, "We take the position —" the court interrupted, saying, "I don't care what your position is. I am telling you what the law is. You cannot ask one whether he thinks a guy is guilty, and that is the law." King responded, "Well, your honor —" and the court interrupted him again, saying, "I don't want to hear any more. I have ruled and I have told you." King tried three more times to have the court clarify its position as to what King would be allowed to ask or not ask, but the trial court would not allow him to finish making his inquiries. After the third incomplete attempt, the court had the juror removed from the courtroom and said, "Mr. King, both of you I have warned repeatedly, last week, too. You do not argue with the Court. Now, do you understand that?" Appellant Bryant, King's cocounsel, apparently speaking for the first time on the portion of the record before us, responded, "We understand that we are not to argue with the Court." The trial court then said, "I am going to hold you in contempt, because I have told you that you do not argue with the Court — When I make a ruling, that is it." King requested and the court granted him an opportunity to explain for the record that counsel did nothing intentionally to disrespect the honor of the court, and that counsel was attempting to elicit from the venireman "whether he had a bias insofar as viewing my client as having done something wrong, versus whether he is guilty. They are two separate issues." King went on to explain that he was not asking the questions to be argumentative, but was doing so in the zealous representation of his client's interests and rights under the Constitution. The court responded that it had "explained to the attorneys repeatedly . . . [that] no attorney shall ever attempt to argue or to explain a case on pain of being considered in contempt." King and Bryant went on to discuss with the trial court their ability to pursue their line of questioning, and the court took the position that the answers the venireman had

given were sufficient responses to the questions that King had posed, and that the question that King sought to ask was not permissible, in the form in which it was asked. When King appeared to disagree, the court said, "I heard the answer. You are arguing with the Court again. I heard the answer. Now, do you understand what is going on here now? I am going to hold you in contempt now . . . for these questions. I am going to do it every time that you do it, too . . . When I say that I have ruled on a case I don't want to hear any argument about it."

We find that the evidence was not sufficient to hold appellants in contempt of court. The trial court was apparently relying on Rule 23 of the former Rules of the Superior Court, which stated that " '[n]o attorney shall ever attempt to argue or explain a case, *after having been fully heard*, and the opinion of the court has been pronounced, on pain of being considered in contempt.' " (Emphasis supplied.) *Farmer v. Holton*, 146 Ga. App. 102 (4) (245 SE2d 457) (1978), overruled on other grounds, *In re Crane*, 253 Ga. 667 (2) (324 SE2d 443) (1985). The rule upon which the trial court relied was expressly repealed with the passage of the Uniform Superior Court Rules, Rule 1.3 (253 Ga. 809) (1985). Even if the rule had not been repealed, it is clear from the record that the trial court held appellants in contempt before it gave them a chance to explain their position, and so they had not been "fully heard" at the point of the court's pronouncement. Moreover, the only thing that appellant Bryant said before being held in contempt for his allegedly argumentative conduct was that "we understand that we are not to argue with the Court." For these reasons, the evidence was not sufficient for any rational trier of fact to find beyond a reasonable doubt that appellants were guilty of contempt.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 13, 1988.

*C. B. King*, for appellants.
*Hobart M. Hind, District Attorney, Earl Jones, Assistant District Attorney*, for appellee.