A91A1541. McDANIEL v. THE STATE.
(414 SE2d 536)

BEASLEY, Judge.

Appellant was convicted of criminal contempt in the superior court for allegedly making a statement of a threatening and intimidating nature to a juror.

On the morning of the incident, appellant was present at the court as a subpoenaed witness in her sister's divorce trial. The jury reached its verdict just prior to the lunch hour, at which time all participants in the trial were excused. The incident giving rise to appellant's conviction occurred as she was leaving the courthouse when two courthouse employees apparently overheard her making a statement to an elderly woman who had served as a juror in the divorce trial, and they apparently reported their observations.

As a result, appellant was summoned back to the courthouse where she was interrogated by a police detective to whom she gave a statement explaining her conduct with respect to the incident in question. The evidence is in dispute as to whether appellant had received *Miranda* warnings and had executed a waiver of counsel prior to making a statement. The detective testified at the contempt hearing that she had; however, no such document appears in the record, and in her brief on appeal appellant denies that *Miranda* warnings had been administered. The court made no finding of fact in this regard.

At the conclusion of that interview, appellant was brought before the judge who had presided at the divorce trial. The judge informed her that she had been accused of making "verbal and insulting comments to a juror . . . and also physically assault[ing] that juror," and

that such conduct constituted direct criminal contempt authorizing an immediate hearing at which the district attorney would present the evidence against her. When appellant inquired, "Does this mean that I can't have an attorney here," the court responded, "You are not entitled to a lawyer in a case like this, I'll be very blunt with you." As the proceedings commenced, the court qualified that response by stating, "if you want to hire a lawyer or have a lawyer with you right now, that's fine, but I'm not going to delay the hearing for that purpose." The summary proceeding was commenced immediately, without a defense counsel.

The evidence adduced is as follows. After the divorce trial had concluded, appellant left the courthouse with her arm around her sister's daughter who was upset and crying concerning the divorce of her parents. At about the same time, a woman who had served as a juror in the divorce trial was also leaving the building. The testimony is in dispute as to what occurred next. Appellant contends that as she and her niece were exiting the building, the child was expressing fear that she would be unable to attend college because of the divorce of her parents. In an effort to console the child, appellant promised that she would help her attend college and further stated that, "we'll have to sleep on it tonight." At about the same time, appellant observed the female juror who appeared to be "laughing and snickering" at them. Appellant admitted that she was upset and said to the juror, "we'll all have to sleep on it tonight." Appellant's version of the events was confirmed by the testimony of her niece as well as by the detective who had taken a statement from appellant shortly after the alleged incident had taken place, which statement was entirely consistent with her testimony at the hearing.

The juror's testimony at the contempt hearing was self-contradictory. She initially stated that as she was leaving the courthouse to join her husband who was waiting for her across the street, she was pushed, causing her arm to hit the ground. When asked whether anything was said to her at that time, she responded: "No, I don't think so." The prosecutor again asked whether anything unpleasant had been said to her (without specifying who may have been speaking). She responded, "I know it was something unpleasant, but I mean, I didn't hear them. I think its because I have just been so shook up." In attempting to have the witness identify the alleged perpetrator, the district attorney inquired: "Well, let me ask you to look around the courtroom here, do you see . . . the . . . [woman] that said this stuff to you and pushed you here today — well, let me just ask you, this lady over here in the green T-shirt?" The juror responded, "I was thinking that it is her. . . . But I'm not sure, I mean, I think it was." The district attorney then inquired, "Do you remember something being said about sleeping with Mr. Howard? (Referring to appellant's

brother-in-law.) Do you remember any remark like that," to which the juror responded, "No, not at all." She then testified that she was not on the courthouse steps at all when she was allegedly pushed, but was "around the corner." When appellant attempted to cross-examine the witness, admitting "I don't know what questions to ask," she was interrupted by the court and admonished to ask questions and not to testify.

The district attorney then offered the testimony of the two court personnel who said they witnessed the incident. The first witness stated that she had seen "this lady" (presumably the appellant) and "heard her say something like you will just have to sleep with him tonight" or "something like that," which comment was directed toward the juror. The second witness testified that she overheard a lady say to the juror, "you go home and sleep with him tonight or something like that." The district attorney concluded with the following inquiry, "Now the lady that made the comment well, you go home and sleep with him tonight or whatever that was, is this her?" The witness replied, "Yes, that's her."

At the conclusion of the hearing, the trial court adjudged appellant to be in criminal contempt of court in that she had interfered with the administration of justice by directing derogatory statements to a juror. It found insufficient evidence of assault. She was sentenced to five days in confinement, fined $250 and removed from the courtroom in the custody of a deputy sheriff. On the following day, an application for supersedeas of the judgment was filed and was granted pending this appeal.

Appellant posits seven enumerations of error, but we reach only one of them because it is dispositive.

1. The judgment of contempt must be set aside because appellant was deprived of the basic due process components of reasonable notice of the charges against her and a meaningful opportunity to respond to them, as guaranteed by the first right listed in the State Constitution. 1983 Ga. Const., Art. I, Sec. I, Par. I.

The law of contempt in this State has had a stormy history. See Stephenson, The Appellate Judiciary of Georgia and Contempt Out of Court, 2 Ga. L. Rev. 341 (1968). As chronicled in that article, its scope and even its source have been subject to shifts of opinion in the appellate courts. The latest pronouncement in this regard is in *Crudup v. State*, 218 Ga. 819, 820 (130 SE2d 733) (1963), cert. den. 375 U. S. 829 (84 SC 74, 11 LE2d 61):

" 'The power to punish contempts is inherent in every court of record.' [Cits.] There is no question that every court has the power to preserve and enforce order in its immediate presence, and as near thereto as is necessary to prevent interruption, disturbance, or hindrance to its proceedings; that this includes the power to compel obe-

dience to its judgments, order and processes, and to control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto. Code § 24-104 [predecessor to OCGA § 15-1-3]. See also Code § 24-105 [predecessor to OCGA § 15-1-4]. Further, no attorney shall ever attempt to argue or explain a case, after having been fully heard, and the opinion of the court has been pronounced, on pain of being considered in contempt. Code Ann. § 24-3323 (formerly Code § 24-3306) [former Rules of the Superior Courts, Rule 23]."

Under the current constitution, this "inherent" power emanates from the authority conferred in Art. VI, Sec. I, Par. IV: "Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments. . . ." This power is not unlimited, however. For one thing, its exercise must be compatible with the constitutional guaranties of free speech and liberty of the press. *McGill v. State*, 209 Ga. 500, 502 (74 SE2d 78) (1953); *Atlanta Newspapers v. State*, 216 Ga. 399 (116 SE2d 580) (1960).

In addition, the power is balanced to some degree by that of the legislature, for the constitution provides in addition that "[t]he power of the courts to punish for contempt shall be limited by legislative acts." 1983 Const., Art. I, Sec. II, Par. IV. One of those, as alluded to in *Crudup*, is OCGA § 15-1-4, which lists the types of cases in which the courts may punish for contempt. The one invoked by the superior court in this case is subsection (a) (1): "Misbehavior of any person or persons in the presence of such courts or so near thereto as to obstruct the administration of justice. . . ."

The statute includes such misbehavior as being subject to "summary punishment," but that must yield to the fundamental constitutional right to due process of law. Where the misbehavior is not in the immediate presence of the court, so that it may " 'act on its own knowledge of the facts,' " summary punishment is not authorized. *Moody v. State*, 131 Ga. App. 355, 359 (2) (206 SE2d 79) (1974). As recognized in the Code of Judicial Conduct, Canon 3 (A) (2), "Judges should maintain order and decorum in proceedings before them." But it also provides, in subsection (4): "Judges should accord to every person who is legally interested in a proceeding, or his or her lawyer, full right to be heard according to law. . . ." As stated in *Moody*, "With this exception [articulated above], . . . due process demands that the contemnor be cited, given notice, and allowed an opportunity to defend or excuse himself." Id. at 359. Accord *Martin v. Waters*, 151 Ga. App. 149, 150 (2) (259 SE2d 153) (1979); see also *Maples v. Seeliger*, 165 Ga. App. 201 (299 SE2d 906) (1983); *Taylor v. Hayes*, 418 U. S. 488, 497 (94 SC 2697, 41 LE2d 897) (1974).

The alleged objectionable remark at issue here was not uttered in the presence of the court, but was made outside the courthouse after

the proceedings had been concluded. As in the federal constitutional case of *Taylor v. Hayes, supra,* there was no necessity for the imposition of summary punishment " 'to preserve order and enable (the court) to proceed with its business.' [Cit.]" Id. at 498. Although appellant, who was obviously unsophisticated in the operation of the criminal justice system, was verbally informed of the charge against her and afforded an opportunity instanter to explain her conduct, she was denied any meaningful opportunity to respond to the charges. See also in this regard Code of Judicial Conduct, Canon 3 (a) (4).

Instead, she was compelled to proceed pro se, in violation of her right to counsel (Ga. Const., Art. I, Sec. I, Par. XIV), while the prosecution, in violation of the rules of evidence, which there was no reason to believe the accused knew, was permitted to build a case against her utilizing inconclusive non-probative hearsay and her own somewhat self-incriminating statements. Such a procedure offends the basic notions of fairness and is not "due process." See, e.g., *Taylor, supra* at 498-500. "Contempt is a drastic remedy which 'ought not to deprive one of his liberty unless it rests upon a firm and proper basis.' [Cits.]" *Martin, supra* at 150 (2). Because appellant was denied minimum requirements of due process, her conviction must be set aside.

2. It is unnecessary to reach the merits of the sufficiency of the evidence to sustain the conviction of criminal contempt, i.e., " ' "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis omitted.) *In re Bryant,* 188 Ga. App. 383, 384 (2) (373 SE2d 74) (1988). See also *Garland v. State,* 253 Ga. 789, 790 (1) (325 SE2d 131) (1985); *In re Crane,* 253 Ga. 667, 669 (2) (324 SE2d 443) (1985). Whether the same facts would be found as set forth in the superior court's order is unknown. Whether those facts as are found could be held to constitute "[m]isbehavior . . . as to obstruct the administration of justice" so that it is subject to contempt punishment is problematic. See *McGill, supra* at 504 ("there must be a 'clear and present danger to the administration of justice' "). See also *Crudup, supra* at 837 (2), and cases cited therein. "The test applied to determine whether a statement is contemptuous is whether there is a clear and present danger to orderly administration of justice," pronounced the Supreme Court of Georgia in *Garland, supra* at 790 (2), and referring to the federal constitutional case of *Wood v. Georgia,* 370 U. S. 375 (82 SC 1364, 8 LE2d 569) (1962). It went on to quote from another federal constitutional case, *Bridges v. California,* 314 U. S. 252, 273 (62 SC 190, 86 LE 192) (1941): " '(N)either "inherent tendency" nor "reasonable tendency" is enough to justify a restriction of free expression.' " Thus, in considering appellant's behavior, whatever it was, the court must consider that "[t]he identification of a statement as constituting clear and present danger to the orderly administration of

justice can be made only after taking into account the setting in which the statement is made." *Garland*, supra at 790-791. Compare *Morgan v. State*, 26 Ga. App. 83 (105 SE 449) (1920).

3. Appellant's remaining enumerations of error are rendered moot.

*Judgment reversed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 6, 1992.

*Gleason, Davis & Dunn, John W. Davis, Jr.*, for appellant.
*Ralph L. Van Pelt, Jr., District Attorney, Michael R. McCarthy, Assistant District Attorney*, for appellee.